**In re CHADWICK BAY HOTEL AS-SOCIATES LIMITED PART-NERSHIP, Debtor.**

**Bankruptcy No. 94–12560 B.**

United States Bankruptcy Court,
W.D. New York.

March 24, 1995.

Zalkin, Rodin & Goodman (Andrew D. Gottfried, Neil E. Herman, Scott D. Talmadge, of counsel), New York City, for Banque Indosuez.

Saperston & Day, P.C. (Raymond L. Fink, Jeffrey E. Reed, of counsel), Buffalo, NY, for debtor.

CARL L. BUCKI, Bankruptcy Judge.

Banque Indosuez is the holder of a mortgage which encumbers the debtor's leasehold interest in property in Dunkirk, New York, on which the Sheraton Harborfront Inn is now located. The debtor, Chadwick Bay Hotel Associates, acquired this interest in 1989 from the Dunkirk Industrial Development Agency. The Sheraton Inn was to represent the first phase of the Upland Site Development for the Harborfront Revitalization Project for the City of Dunkirk. Subsequent phases of this project were never completed. Perhaps as a result, the hotel failed to achieve the levels of profitability that were originally projected. In June 1994, the debtor defaulted on the obligations owed to Banque Indosuez. This mortgagee then commenced a foreclosure action in state court on September 6, 1994. Later that same day, Chadwick Bay Hotel Associates filed a petition under Chapter 11 of the Bankruptcy Code. Wishing to continue its foreclosure proceeding, Banque Indosuez has brought the present motion for stay relief.

■ This Court has heard three full days of testimony and argument relative to the value of the mortgagee's collateral and its eligibility for stay relief. At issue are the provisions of 11 U.S.C. § 362(d)(2), which requires that this Court grant such relief

with respect to a stay of an act against property ... if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The lien of Banque Indosuez secures an obligation of more than $4,000,000. In addition, the New York Job Development Authority holds a second mortgage to secure an indebtedness which exceeds $165,000, and the City of Dunkirk holds a disputed third mortgage in the amount of $2,750,000. The debtor constructed the hotel in 1989 at an original cost of more than ten million dollars. Although the property remains in excellent physical condition, all parties concede that it has declined substantially in value. The mortgagee's appraiser estimated the collateral to have a value of $1,500,000, while the debtor's expert calculated its worth at $3,550,000. This Court believes that the debtor's appraisal is excessive, primarily because it is based upon overly optimistic projections of future net income and because it utilizes capitalization rates that are too high. An exact valuation is not necessary at this time, however, because neither appraisal recognizes any equity for the debtor in the collateral. Even if the property were assigned a full value of $3,550,000, undisputed liens far exceed that amount.

■ Having demonstrated an absence of equity, Banque Indosuez is entitled to some form of stay relief if it can satisfy the second condition of section 362(d)(2), that the prop-

erty not be necessary to an effective reorganization. As the debtor's primary asset, the Harborfront Inn is unquestionably needed if the debtor is to develop a plan to reorganize as an operating entity. But such need alone is not determinative, as it would render section 362(d)(2) meaningless in virtually all cases involving a vital asset of the debtor. Rather, the standard is that which the Supreme Court stated in its decision in *United Savings Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988)[1]:

> What [section 362(d)(2)] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is* in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

As to this issue, subdivision (g) of section 362 squarely imposes the burden of proof upon the debtor. The question now presented, therefore, is whether Chadwick Bay Hotel Associates has fulfilled that burden to demonstrate the reasonable probability of a timely reorganization.

During the early stages of a Chapter 11 proceeding, courts will give greater deference to a debtor's assertions that an effective reorganization is in prospect. *See, e.g., In re Missouri Flats Associates*, 86 B.R. 634 (Bankr.E.D.Cal.1988), and *In re Ashgrove Apartments of DeKalb County, Ltd.*, 121 B.R. 752 (Bankr.S.D.Ohio 1990). This is not to say that burdens of proof change at any point in the reorganization process. Rather, it is a recognition that Chapter 11 is a powerful tool to resolve financial problems and offers unique opportunities to negotiate outstanding disputes. In many instances, the passage of time indicates an inability to capitalize upon that opportunity and evidences a decreasing likelihood of a successful reorganization. The proximate filing of a petition, however, creates no presumption of reorganizability. Even when a secured creditor seeks stay relief shortly after a bankruptcy filing, the debtor retains the burden to show that an effective reorganization is in prospect. Although status as a Chapter 11 debtor will itself evidence an opportunity to reorganize, facts and circumstances may indicate a minimal likelihood for success, even before that impression is reinforced by delays in presentment of a plan.

Every reorganization proceeding is unique and presents distinct challenges for achieving plan confirmation. In each case, the Court must assess the key variables which may impact upon the confirmation process. In the context of these variables, the Court must determine whether the debtor has sustained its burden to show that within a reasonable period of time, it can present a confirmable plan.

Prior to its bankruptcy filing, Chadwick Bay Hotel Associates was unable to meet income projections and consequently defaulted on its obligations to Banque Indosuez. It is not the purpose of the present hearing to determine the cause of the debtor's revenue shortfall. Rather, it suffices to note that the debtor attaches blame to the City of Dunkirk and to that municipality's failure to complete subsequent phases of the Harborfront Revitalization Project. For this reason, the debtor commenced an action in state court to recover $6.6 million in damages from the City. The debtor has removed this action to the Bankruptcy Court, where it is now pending. Meanwhile, the City and its Industrial

---

1. Debtor's counsel creatively argues that the Supreme Court's recitation of this standard is mere dicta that is unnecessary to its ultimate holding that interest does not accrue on undersecured obligations during the effective period of the automatic stay. *See In re Rassier*, 85 B.R. 524 (Bankr.D.Minn.1988). This court disagrees. As stated in the *Timbers* decision, "[s]tatutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme...." 484 U.S. at 371, 108 S.Ct. at 630. In his decision, Justice Scalia sought to reconcile "a series of provisions in the Bankruptcy Code dealing with the rights of secured creditors." *Id.* at 371, 108 S.Ct. at 630. Inasmuch as a reconciliation of the statutory scheme was essential to his reasoning and holding, the elements of that resolution are binding upon this court. Moreover, even if that resolution were dicta, this court finds the reasoning of Justice Scalia to be compelling, and would follow it in any event.

Development Authority remain substantial but disputed creditors in this case. In addition to other unsecured claims, the city holds a third mortgage in the amount of $2,750,000.

■ In the present case, any confirmable plan must somehow address at least three variables: income, the resolution of claims that the City of Dunkirk may assert against the Debtor, and the liquidation of the debtor's claims against the City. As to income, the feasibility of any plan will unquestionably hinge on the debtor's ability to generate sufficient revenues in excess of current expenses. Income projections alone, however, are insufficient to establish the feasibility of a plan. In addition, the plan proponent must show the sufficiency of available income to address probable liabilities. Thus implicated is the second key variable, namely, a resolution of the debtor's liability to the City of Dunkirk. The potential magnitude of these claims dictates that the plan deal with them in some fashion, though not necessarily through a final settlement of amounts due. Furthermore, 11 U.S.C. § 1129(a)(7) imposes a Chapter 7 test for plan confirmation, that each non-consenting impaired claimant receive or retain at least as much as if the debtor were liquidated. No plan could satisfy the Chapter 7 test without dealing in some fashion with the third variable, it being the liquidation of what may be the debtor's largest asset, its action against the City of Dunkirk.

Counsel for the debtor argues that only five months have transpired since his client's bankruptcy filing, that the debtor is only now realizing the benefits of a new management company that was selected in July 1994, and that the debtor's hotel is a highly seasonal business, with its peak activity occurring during summer months. Contending that the debtor requires the passage of a full business cycle in order to assess its reorganization options, counsel seeks a continuance of the stay until the end of 1995.

It is not the function of this Court to develop or to suggest a reorganization plan which might have a realistic possibility of confirmation. This task is generally reserved to the debtor during the first 120 days of the reorganization process and, thereafter, to the debtor, creditors, equity security holders, and certain committees and trustees. 11 U.S.C. § 1121. Consistent with this function, the debtor carries the burden on the present motion to show that a realistic plan is in prospect. Although counsel's argument seeks to address plan feasibility from the perspective of income, it fails to deal with the other key variables that will impact upon the confirmation process. Specifically, the debtor offers no proposal regarding its disputes with the City of Dunkirk.

■ The debtor commenced its litigation with the City of Dunkirk only after Banque Indosuez had declared a default on the outstanding bonds. Now in its early stages, this complex litigation offers no promise of any prompt resolution. It may well be that a resolution is not required for confirmation of a plan. The debtor, however, suggests no plan provisions which might address these disputes, whether by means of settlement or by means of a reservation of rights in continuing litigation, or otherwise. In response to the Court's inquiry, counsel merely indicated that perhaps a settlement might be achieved during the coming months. Surely, the secured creditor deserves a more concrete indication of a timetable for treatment of its secured rights. Under *United Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. at 382, 108 S.Ct. at 636, Banque Indosuez is not entitled to interest prior to plan confirmation. Rather, the protection of its secured claim must come from its entitlement to stay relief unless the debtor can demonstrate a "reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 376, 108 S.Ct. at 633. Chapter 11 does not grant debtors a license to hold the rights of secured creditors in indefinite abeyance. Although those rights are stayed to allow the refinement and confirmation of a plan, the continuation of that stay assumes that a confirmable plan is at hand. This Court will not compel Banque Indosuez to await the outcome of uncertain litigation between the debtor and the City of Dunkirk. Having failed even to suggest an appropriate plan treatment for the interests of the City of Dunkirk, the debtor has not met its burden, as defined under *United Savings Ass'n v. Timbers of Inwood Forest, id.,* to show that a successful reorganization is reasonably in prospect.

Section 362(d) requires that this Court grant stay relief when, as here, a secured creditor satisfies the conditions of the second subdivision of that section. The statute, however, accords broad discretion as to the form of appropriate stay relief, which may include "terminating, annulling, modifying, or conditioning such stay." Banque Indosuez urges a complete lifting of the automatic stay. On the other hand, the debtor proposes to make "adequate protection" payments[2] totalling $120,000 during the current calendar year.

The essence of the debtor's proposal is to reimburse Banque Indosuez for the delay in confirmation of a plan to repay its secured claim. For this type of proposal to be meaningful, the debtor must satisfy two requirements: the payment must be feasible and must roughly equal interest at a fair rate of return on the value of the secured claim. On the present facts, these two requirements play against each other and mutually preclude their simultaneous fulfillment. To the extent that this Court were to accept the appraisal of Banque Indosuez that its collateral has a value of $1,500,000, the offer to pay $120,000 per year might be reasonable. However, this appraisal is based upon an income analysis which indicates an inability to complete the proposed payment. On the other hand, the competing appraisal of $3,550,000 is based upon income that is amply sufficient to make this payment. In this instance, however, the sum of $120,000 is insufficient to reimburse Banque Indosuez for delay in providing repayment of its larger secured claim.

The value of property is inherently related to the income that can derive from its use. An increase in projected income may enhance the debtor's ability to pay, but it will also increase the property value which the debtor proposes to protect. At any value between those that the parties have suggest-ed, the debtor's offer is either insufficient, or not feasible, or both. In the absence of a viable alternative that can safeguard the interests of Banque Indosuez, this court will lift the automatic stay to permit commencement of foreclosure proceedings.

As noted earlier, section 362(d) gives to this Court broad discretion to fashion an appropriate form of stay relief. Whenever collateral is essential to the activity of an ongoing business, stay relief may impinge upon interests other than those of the secured creditor. For example, in timing the scheduling of a foreclosure sale, it may be appropriate to balance secured rights against other contractual obligations. Perhaps an inconsequential delay of the foreclosure sale might avoid substantial liability for breach of agreements to allow use of the facilities for weddings, conventions, conferences, or other purposes. Proper planning may minimize the risk of losses which might result from a precipitous or untimely termination of business activity. This Court is also mindful of the rights of innocent third parties, particularly those for whom a slight accommodation may avoid untoward damage or embarrassment. The present record is inadequate to permit a consideration of all relevant factors. Accordingly, the parties are directed to negotiate the terms of an order lifting the stay to permit foreclosure proceedings. Upon submission of this order, counsel should be prepared to show that it incorporates reasonable protections for innocent contractees.[3] If the parties are unable to reach agreement as to such an order within thirty days, they shall advise the Court, which will then draft its own order after such further hearings as may be warranted at that time.

So ordered.

---

**2.** Under *United Savings Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), a debtor need not make adequate protection payments on account of an undersecured obligation. The Court will interpret the debtor's offer of adequate protection as a suggestion that any stay relief be in the form of an order conditioning that stay upon payment of an annual sum of $120,000.

**3.** These protections may include notice to hotel clients, arrangements for operating post-foreclosure, plans for referral to substitute facilities, or agreement as to a schedule for early cancellation or cover of outstanding commitments.