In re Rona V. FINIZIE, Debtor,

Rona V. FINIZIE, Plaintiff,

v.

The CITY OF BRIDGEPORT, Defendant.

Bankruptcy No. 95–50347.
Adv. No. 95–5054.

United States Bankruptcy Court,
D. Connecticut.

July 26, 1995.

Rona V. Finizie, Bridgeport, CT, pro se.

Richard S. Scalo, Ronald D. Japha, Gordon & Scalo, Bridgeport, CT, for City of Bridgeport.

Jeffrey L. Sapir, Jody L. Kava, Chapter 13 Trustee, White Plains, NY.

## MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM STAY BY THE CITY OF BRIDGEPORT

ALAN H.W. SHIFF, Bankruptcy Judge.

This Memorandum of Decision contains findings of fact and conclusions of law pursuant to Rule 7052 Fed.R.Bankr.P., made applicable to this contested matter by Rule 9014 Fed.R.Bankr.P. It supplements the findings and conclusions stated and recorded in open court at the hearings conducted on June 7, 1995 and July 19, 1995 on the motion of the City of Bridgeport for relief from the automatic stay, which for the reasons that follow is granted.

### FINDINGS OF FACT

This chapter 13 case was commenced on March 7, 1995, by Rona V. Finizie. On March 20, 1995, the City of Bridgeport (the "City") filed the instant motion for relief from stay pursuant to § 362(d)(1) and (2). On April 18, 1995, the debtor, appearing pro se, filed an "answer" to the City's motion, asserting several "defenses," including: the petition is not filed in bad faith; the movant has unclean hands; the debtor is seeking damages against the movant in a civil rights action in the District Court for this district; there is substantial equity in the debtor's property; this court should not terminate, but rather "condition" or "modify," the stay; the movant has not shown irreparable harm and the debtor will suffer irreparable harm; and the movant is not entitled to relief from stay because the taxes claimed by the movant are subject to discharge. Hearings on the City's motion, a motion to dismiss or convert by the chapter 13 trustee, the confirmation of the debtor's plan, and the City's motion to dismiss a related adversary proceeding, were scheduled on June 7, 1995 and July 19, 1995.

The City has filed two proofs of claim: (i) a secured claim in the amount of $222,623.73, filed May 10, 1995, for real estate taxes, including interest thereon and collection costs, see City's Exhibit 4; and (ii) an unsecured priority claim in the amount of $132.06, filed May 12, 1995. The debtor has filed no objection to either proof of claim. The City's real estate tax claim is secured by liens on two adjacent parcels of Bridgeport property in which the debtor holds an interest, to wit: 2440 North Avenue, which is the debtor's principal residence, and 2428 North Avenue, which is an adjacent vacant lot. See City's Exhibit 7.

According to the testimony of Mr. Eugene Boselli, Taxation Supervisor for the City of Bridgeport, taxes are delinquent for the period commencing in 1976 and continuing through the first half of 1994. The last payment the debtor made to the City was on February 27, 1981. The City first commenced litigation to foreclose its tax liens in 1984. Although the debtor approached the City in 1983 or 1984 in an attempt to reach an agreement, the City rejected the debtor's proposal because the amount she offered to pay, in the range of $150 to $300 per month, was insufficient to reduce the principal amount she owed for delinquent taxes. Indeed, the amount she owed for delinquent taxes would actually increase under her proposed payment schedule because of the accrual of interest during the payment period.

In 1985, the debtor was permitted to participate in an amnesty program pursuant to which the City would waive past due interest if the principal amount of the taxes were paid by June 30, 1985. However, the debtor never made that principal payment. The debtor testified that in 1990 she offered to pay $1000 to the City, but the City's agent did not respond to that offer. She testified that the City refused on several occasions to tell her how much was owed and that those refusals hampered her ability to satisfy her tax obligations.

The City's foreclosure action resulted in a Connecticut Superior Court judgment of foreclosure on March 25, 1987. The City offered a transcript, see City's Exhibit 8, of the hearing at which judgment entered. Although the debtor asserted that that transcript is a "fraud" and that no hearing ever occurred, she offered no support for those assertions. The sale date was set for May 21, 1988. On May 20, 1988, the debtor filed her first chapter 13 petition, which resulted in a confirmed plan requiring the debtor to sell one of the parcels of the property. She

did not, and the case was dismissed on the City's motion on September 2, 1992. The City reopened the foreclosure judgment and a new sale date was set. On June 17, 1993, shortly before the new sale date, the debtor filed her second chapter 13 petition. The City obtained relief from the automatic stay on July 20, 1993. The debtor then voluntarily dismissed her case.

Following various appeals in the state court system by the debtor, and a denial of a writ of certiorari to the United States Supreme Court, on October 3, 1994, the state court found the value of 2428 North Avenue to be $15,000 with taxes owed of $24,308.46, found the value of 2440 North Avenue to be $53,000 with taxes owed of $132,724.99, entered a new judgment of strict foreclosure, and set the debtor's law day for March 7, 1995. *See* City's Exhibits 9 and 10. The foregoing amounts are exclusive of additional attorney's fees and appraiser's fees, which were also allowed by the state court. On March 7, 1995, the date of the debtor's law day, she commenced this third chapter 13 case.

On February 17, 1995, the debtor filed a civil rights action against the City and others in the United States District Court for the District of Connecticut, Case No. 3:95CV00308 (RNC). Among other relief, the debtor sought a temporary injunction to enjoin the City from honoring or enforcing the March 7, 1995 law day. On March 6, 1995, Magistrate Judge Martinez recommended that the debtor's application for temporary injunction be denied. On March 29, 1995, District Judge Chatigny approved and adopted that recommended ruling. The debtor has not appealed that ruling. Pursuant to this court's June 8, 1995 scheduling order (the "Scheduling Order"), the City filed a motion in the District Court to dismiss the remaining counts on or before June 16, 1995. No evidence was presented that the District Court has acted on that motion.

The debtor filed a chapter 13 plan on April 10, 1995. The plan provides for payments of $300 per month for 60 months. The plan states that the debtor is disputing the claims in the District Court action and that the debtor is "requesting a discharge" of the

City's taxes from 1976 through 1993 under §§ 507(a)(8)(B) and 523(a)(1)(A). The City has filed an objection to confirmation of the plan.

On May 10, 1995, the debtor filed a handwritten "Complaint to Determine Dischargeability of Local Taxes, Interest and Penalties" (Adv.P. No. 95–5054). That complaint stated that "[b]ased on the Debtor's current income and expenses, the Debtor cannot maintain a minimal living standard and pay approximately $200,000.00 in taxes, interest and penalties which are claimed as due, but are disputed." The complaint requested no relief. At a June 7, 1995 hearing, the debtor stated a desire to amend her complaint, and pursuant to the Scheduling Order, she did so on June 30, 1995.

The amended complaint is styled as a complaint "to determine dischargeability of local taxes, interest, penalties and attorney's fees." In contrast to the original complaint which sought to "discharge" the tax claim, the amended complaint seeks "a determination as to the validity and extent of the City of Bridgeport's ... interest in certain real property of the estate" pursuant to § 506(a). Paragraph 5 of the amended complaint states that "the value of the property securing Creditor's claim is less than the amount of the Creditor's claim, and, accordingly, pursuant to 11 U.S.C. § 506(a) holds both a secured claim and an unsecured claim [sic]." The relief requested is: "that this court determine the validity and extent of Creditor's liens against the property of the estate and in the process determine the amount of Creditor's secured claim. To the extent that secured party's claim is unsecured, the Debtor prays that this court avoid the liens pursuant to 11 U.S.C. § 506(d)." Although the prayer for relief in the amended complaint asks the court to determine the "validity and extent" of the City's liens on the property as well as to determine the amount of the City's secured claim, the complaint states no ground upon which the validity or extent of the City's lien is challenged, other than that the City's claim is undersecured. The City filed a motion to dismiss the amended complaint on July 10, 1995.

Pursuant to the Scheduling Order, the debtor filed a list of "Pending or Future Issues Which May Affect Confirmation of Debtor's Plan" (the "Statement"). The Statement identifies all issues which will, in the debtor's view, affect the confirmation of the debtor's chapter 13 plan or any amended plan. With respect to the District Court action, the Statement notes: "If the above cited Civil Rights case is dismissed from Federal Court for lack of jurisdiction, Debtor will file a 1983 action in state court." In addition to the District Court action and adversary proceeding described above, the Statement references a probate action for the debtor's deceased mother. The debtor states that the probate court ordered the sale of the residence, but that the appellate court overturned that ruling in 1986, and "[n]othing has happened since." The Statement also indicates that "Debtor reserves the right to appeal any or all decisions" and that "if need be, Debtor will institute a suit at equity."

At the July 19, 1995 trial, the debtor attempted to challenge the policy of the City that payments made on account of delinquent taxes are applied to the oldest delinquencies first. However, she provided no basis for a conclusion that that procedure was either contrary to law or unreasonable. The debtor attempted to challenge the rate of interest charged by the City as being excessive, but again provided no basis for such a conclusion. She asserted that the City came to this court with unclean hands and that the City contrived to amass enormous claims against her so that it could obtain her property through foreclosure, but she produced no evidence whatsoever to support those claims. The debtor also argued that one of the City's attorneys was "tax counsel" to the City, and so should not be paid attorney's fees for his services.

The City offered the testimony of its appraiser that the value of 2440 North Avenue (the residence) was $60,000 and that the value of 2428 North Avenue (the lot) was $15,-000, for a combined value of $75,000. The debtor offered no evidence to contradict that testimony.

## CONCLUSIONS OF LAW

Subsections 362(d) and (g) provide in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

.        .        .        .        .

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

### Section 362(d)(1)

The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property." If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir.1990) (citations omitted). While "cause" under § 362(d)(1) *includes* a lack of adequate protection, no express guidance is given as to what other factors might constitute cause. In *Sonnax,* the Second Circuit listed 12 relevant consid-

erations. Having considered all of those, I conclude that four of the *Sonnax* factors are relevant: (1) whether the petition was filed in bad faith, (2) the impact of the stay on the parties and the balance of harms, (3) the interests of judicial economy and the expeditious and economical resolution of litigation, and (4) whether the parties are ready for trial in the other proceeding. *Id.* at 1286.

Both the fairness of the result to the creditor and the bona fides of the debtor's purpose in filing the petition are relevant to the bad faith inquiry. *In re Eatman*, 182 B.R. 386, 392 (Bankr.S.D.N.Y.1995). "Serial filings are evidence of bad faith, as are petitions filed to forestall creditors, often replete with false and misleading information, that offer no legitimate prospect of reorganization." *Id.* (citations omitted). *See In re Con Am Grandview Assocs., L.P.*, 179 B.R. 29, 31 (S.D.N.Y.1995); *Manhattan King David Restaurant Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y.1993) (relief properly granted where single asset debtor filed chapter 11 petition when it was unable to post appeal bond from state court judgment of possession); *In re Grand Traverse Dev. Co. Ltd. Partnership*, 150 B.R. 176, 192–95 (Bankr. W.D.Mich.1993) (bad faith found where chapter 11 debtor had few employees, little unsecured debt, had filed chapter 11 twice on the morning of foreclosure, the debtor's problems involved a state law dispute, and the debtor had a history of modifying plans at the last moment); *cf. In re Frenz*, 142 B.R. 611 (Bankr.D.Conn.1992). The factors considered to determine whether a chapter 13 plan has been proposed in good faith are also relevant to whether the petition was filed in good faith. *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994). The determination of whether a plan has been proposed in good faith must be made on a case-by-case basis after reviewing the totality of the circumstances. § 1325(a)(3); *Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 (10th Cir.1993) (per curiam); *In re Paulson*, 170 B.R. 496, 498 (Bankr.D.Conn.1994). The bankruptcy court must inquire as to whether the debtor has misrepresented facts in the plan, unfairly manipulated the code, or otherwise proposed the plan in an inequitable manner. *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir.1983) (per curiam). Relevant factors include the amount of proposed payments, the debtor's earning capacity, the types of debt sought to be discharged, the frequency with which the debtor has sought bankruptcy relief, and the motivation and sincerity of the debtor. *In re Robinson, supra*, 987 F.2d at 668 n. 6.

■ The City offered evidence that taxes have been delinquent since 1976 and that it has been involved in litigation to collect those taxes since 1984. The debtor admitted that she has made no payment of tax since February 27, 1981. This is the debtor's third bankruptcy filing, and she remains unable to propose a viable plan for satisfying the City's claims. There is an abundance of evidence to support the conclusion that the debtor has failed to make a good faith effort to satisfy her obligations to the City. The gross insufficiency of proposed payments, *see infra*, pp. 10–11, and the debtor's previous repeated inability to consummate a chapter 13 plan treating the City's debt, indicate that the plan is not proposed in good faith. The history of repetitive filings on the eve of foreclosure also supports the conclusion that the instant filing is in bad faith.

As to the balance of the harms, I am, of course, cognizant that the debtor stands to lose her home should the City ultimately prevail in its state court actions. However, in view of the history of the litigation between the parties and the large amount of the City's claim that will remain unsatisfied even if the residence is finally sold, I conclude that the balance of the harms now favors the City. Judicial economy and the interests of an expeditious and inexpensive resolution of these disputes also favor permitting the state court to consider any remaining claims the debtor may assert. That court is in a better position to assess the effect and finality of its prior orders. As noted, the state court proceedings have progressed to final judgments. For all of those reasons, I conclude that relief is warranted under § 362(d)(1).

### Section 362(d)(2)

In *In re Broad Assocs. Ltd. Partnership*, 110 B.R. 632 (Bankr.D.Conn.), *aff'd*, Civ. No. B–90–170 (JAC), 1990 WL 293699 (D.Conn. 1990), this court summarized authority establishing the standard for relief under § 362(d)(2) as follows:

> "Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.' See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'"

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988) (emphasis in original and citation omitted). As noted in *Travelers Life and Annuity Co. v. Ritz–Carlton of D.C., Inc. (In re Ritz–Carlton of D.C., Inc.)*, 98 B.R. 170, 172 (S.D.N.Y.1989), "[t]he debtor's burden of demonstrating a reasonable possibility of a successful reorganization increases with time." ... Courts in this circuit since *Timbers* have held that under the "feasibility" test, a debtor need not demonstrate that its proposed plan of reorganization is confirmable. *Carteret Savings Bank v. Nastasi–White, Inc. (Matter of East–West Assoc.)*, 106 B.R. 767, 774 (S.D.N.Y.1989); *In re Ritz–Carlton of D.C., Inc., supra*, 98 B.R. at 172. It is implicit in that test, however, that the proposed plan must avoid statutory flaws that would prohibit confirmation. In addition, the debtor must prove that "'the things which are to be done after confirmation can be done as a practical matter.'" *In re Ritz–Carlton of D.C., Inc., supra*, 98 B.R. at 172 (quoting *In re Fenske*, 96 B.R. 244, 249 (Bankr.D.N.D.1988)).

*Id.* at 635–36; *see also In re Chadwick Bay Hotel Assocs. Ltd. Partnership*, 180 B.R. 47, 49 (Bankr.W.D.N.Y.1995); *In re Sidelinger*, 175 B.R. 115, 117 (Bankr.D.Me.1994); *In re Kent Terminal Corp.*, 166 B.R. 555, 560–61 (Bankr.S.D.N.Y.1994). Accordingly, the burden is on the City to prove that there is no equity in the property subject to its liens, and the burden is on the debtor to prove that her plan has a realistic possibility of being confirmed. *In re 160 Bleecker Street Assocs.*, 156 B.R. 405, 411 (S.D.N.Y.1993).

■ The state court judgments found that the combined value of the two parcels on October 3, 1994 was $68,000. The appraiser who testified for the City stated that the property has a fair market value of $75,000. The state court judgments also found that the total tax debt was $157,033.45. That amount was exclusive of additional attorney's fees (which the debtor appears to challenge), post-judgment, prepetition interest and costs, and postpetition interest and costs, *see* § 506(b). Unless those judgments were procured by fraud or collusion or the state court lacked jurisdiction—and there is no evidence whatsoever to support that conclusion—this court is bound to give those judgments full faith and credit. *Kelleran v. Andrijevic*, 825 F.2d 692, 694–95 (2d Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). The debtor has offered no evidence whatsoever that the allowed amount of the City's claim is less than $222,623.73, as asserted by the City's proof of claim. It is therefore apparent that the City has sustained its burden of proof on the equity issue.

Even if adversary proceeding number 95–5054 is construed to be a § 506(a) action, and even if the debtor is successful in that action, she has no ability to treat the City's allowed secured claim in the manner required by the code, i.e. by paying its full allowed amount over the course of the plan. *See* § 1325(a)(5). Giving the debtor the benefit of the lower valuation of $68,000, and assuming *arguendo* that she succeeded in reducing or setting off the City's claim to a total of $68,000 from $222,623.73, and there is not a scintilla of evidence to suggest that she could achieve that success, the debtor's proposed plan payments of $300 per month for 60

months or a total of $18,000 are obviously insufficient to address the allowed amount of the City's secured claim. In Schedule J, the debtor states excess income over expenses of only $314. Thus, there is no prospect that any modified plan could address the City's secured claim out of her "wages."[1] *See* § 1325(a)(6); *In re Baxter*, 155 B.R. 285, 288 (Bankr.D.Mass.1993).

With regard to the potential avenues of recovery listed in the debtor's Statement, I conclude that none of them provides a reasonable possibility of a successful reorganization within a reasonable time. The probate action does not appear to provide a source of funding. Indeed, if the property were eventually sold in the probate proceeding, it would obviously not be necessary for an effective reorganization. With respect to the District Court action, if the City prevails on its motion to dismiss, then there is no source of funds. Even if the debtor prevails on that motion, or if the City prevails but the debtor files a new action in the state court, there is no basis for me to conclude that the debtor will prevail in the District Court action or any new state court action within a reasonable time or indeed whether she will prevail at all.

With respect to the adversary proceeding pending in this court, the debtor probably can apply § 506(a) to the City's claim. Contrary to the City's argument, § 1322(b)(2) protects only "security interests" in principal residences, not "statutory liens" such as the City's. *See* § 101(51), (53). As noted, however, even with the benefit of § 506(a), there is no reasonable prospect that the debtor could treat the secured claim established under that procedure. Moreover, to the extent that the adversary proceeding could be construed to request a "discharge" of the City's claim, assuming that the debtor is entitled to a discharge after completion of plan payments, *see* § 1328(a), the debtor would still have to treat the allowed amount of the City's secured claim in her plan, as a discharge does not eliminate the City's *in rem* rights against the property. The debtor's comment in the Statement that she reserves the right to appeal has no effect on her prospects for funding a plan. Likewise, her naked assertion that she might institute a "suit at equity" is of no avail where no such suit has been filed and the debtor has presented no evidence that would support such a suit. In short, there has been no evidence whatsoever that there can be "a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd., supra*, 484 U.S. at 376, 108 S.Ct. at 633.

At the conclusion of the trial, the debtor stated that she intended to claim the $75,000 homestead exemption provided by Conn.Gen. Stat.Ann. § 52–352b(t) (West Supp.1995). Apart from the fact that the debtor failed to list her exemption claim in the Statement as an issue bearing on the confirmability of a plan as required by the Scheduling Order, the homestead exemption does not affect the City's secured claim. That exemption is available "to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property *less the amount of any statutory or consensual lien which encumbers it* " (emphasis supplied). As there is no equity in the property above the City's statutory lien, the exemption is not available to the debtor. Nor can the City's statutory lien be avoided pursuant to § 522(f).

I accordingly conclude that relief from the stay is also warranted under § 362(d)(2).

I emphasize that my decision to grant the City relief from the stay in this case affords the City no substantive relief, but simply gives the City the right to continue its state court actions. The debtor is free to assert any defenses or counterclaims that are available to her under state law and procedure. I reject the debtor's assertions that the state courts, or any judicial officer in that system, are in league with the City against the debtor.

Having listened to the testimony of the witnesses and assessed their credibility, and having reviewed the documentary evidence and considered carefully the arguments of

---

**1.** Almost all of the debtor's claimed income derives from Social Security payments.

422

the parties, I conclude that the City is entitled to relief under § 362(d)(1) and (2).

I note that the standing chapter 13 trustee filed a motion to dismiss this case with prejudice or convert it due to a lack of evidence of insurance on the property and due to the apparent lack of feasibility of the filed plan. For the foregoing reasons, I conclude that dismissal or conversion is warranted under § 1307(c), but I believe the better course is to grant the City's motion for relief and leave the case pending. The debtor will be unable to file another case while this case is pending. Should the debtor voluntarily dismiss the case, see § 1307(b), the 180 day bar on refiling under § 109(g) will be operative. Anticipating further dilatory litigation tactics by the debtor, the City asks me to grant extraordinary relief, such as "annulling" the automatic stay so that the debtor's law day will be deemed to have passed, or enjoining the debtor from filing a new petition. I decline to grant such relief at this juncture, as it may or may not be necessary. I am deeply concerned about the long history of litigation between these parties, and I believe that this debtor should not be permitted to use bankruptcy law to frustrate the legitimate rights of the City by denying it access to the state courts. Should another case be filed, this court will take immediate action. Should it appear to the City that there is a risk that the debtor might commence a fourth case after the 180 day prohibition, the City may file an appropriate action in this court seeking injunctive or other relief. See § 105(a).

### ORDER

The City's Motion for Relief is GRANTED. All proceedings in this case and in Adversary Proceeding No. 95–5054 are SUSPENDED pending the further order of this court, see § 305(a). IT IS SO ORDERED.