**In re Michael Thomas MacINNIS, Debtor (Two Cases).**

**Nos. 98 Civ. 2894(SAS), M47.**

United States District Court,
S.D. New York.

Nov. 24, 1998.

Robert E. Goldman, Schlam Stone & Dolan, New York City, for appellant Joseph Shanahan.

Ahmed A. Massoud, Massoud & Pashkoff, P.C., New York City, for appellee Michael Thomas MacInnis.

Tracy Hope Davis, Office of the United States Trustee, New York City, for trustee Carolyn S. Schwartz.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Joseph Shanahan ("Shanahan") appeals the January 8, 1998 Order of the United States Bankruptcy Court for the Southern District of New York on the ground that

the Bankruptcy Court's denial of his motion to lift the automatic stay was an abuse of discretion. Michael Thomas MacInnis ("MacInnis") argues that the Bankruptcy Court's decision should not be disturbed because Shanahan has failed to demonstrate that (1) the Bankruptcy Court's findings of fact were clearly erroneous, or (2) its legal determinations were made in error or constituted an abuse of discretion.

By a separate motion, Shanahan moves for leave to appeal the Bankruptcy Court's Order denying his motion to dismiss the Chapter 11 bankruptcy petition as having been filed in bad faith. MacInnis contends that leave should be denied because Shanahan has not obtained the certification from the Bankruptcy Judge as required under 28 U.S.C. § 1292(b).

Because MacInnis filed his Chapter 11 petition in bad faith, the Bankruptcy Court abused its discretion in not finding "cause" to lift the automatic stay and in failing to dismiss the bankruptcy petition. The Bankruptcy Court's Order with regard to lifting the stay and dismissing the petition are therefore reversed.

## I. FACTUAL BACKGROUND

On or about May 1994, MacInnis sought a buyer to acquire L & S Research Corporation ("L & S"). *See* Affidavit of Robert E. Goldman, Shanahan's attorney, dated July 16, 1997 ("Goldman 7/16/97 Aff.") at ¶ 3. After failing to organize a financing group, MacInnis approached Shanahan, whom he believed had access to financing or investment capital. *Id.* MacInnis agreed to share any transaction fees resulting from the acquisition of L & S, provided that Shanahan introduced him to an entity that ultimately purchased the Company. *Id.* Shanahan then introduced MacInnis to the President of Lincolnshire Management, Inc. ("LMI"). *Id.* A dispute arose between MacInnis and LMI over the purchase of L & S which resulted in Ma-

cInnis suing LMI in federal court. *Id.* at ¶ 7. The case settled with LMI paying MacInnis two million dollars. *Id.* at ¶ 9. Shanahan received no portion of the settlement.

In February 1995, Shanahan sued MacInnis in the Supreme Court of the State of New York to recover his fifty percent share of the finder's fee paid by LMI. *See Joseph Shanahan v. Michael MacInnis* (Index No. 103120/95). Finding that Shanahan had "demonstrated the likelihood of success on his claim," the state court issued an order of attachment freezing the $527,000 balance of the $2 million finder's fee paid to MacInnis by LMI.[1] *See* Designated Documents for Record on Appeal ("ROA") at 65.

On May 20, 1997, MacInnis sought relief from the Attachment Order and filed a Chapter 11 petition with the United States Bankruptcy Court, allegedly in order to reorganize his business and liabilities. *See* Affidavit of Ahmed A. Massoud, MacInnis' attorney, dated November 20, 1997 ("Massoud Aff.") at ¶ 4. On or about July 1, 1997, Shanahan filed a Proof of Claim in the bankruptcy proceeding setting forth a claim in the amount of $1,222,164.38, comprised of $526,908.34 of secured indebtedness, and $695,256.04 in unsecured indebtedness. *See id.* at ¶ 5.

On or about August 18, 1997, MacInnis commenced an adversary proceeding in opposition to Shanahan's claim, and filed an Amended Complaint on September 16, 1997. *See id.* at ¶¶ 7–8. On November 7, 1997, Shanahan moved to dismiss the Chapter 11 petition pursuant to 11 U.S.C. § 1112(b) on the ground that the petition was filed in bad faith, or in the alternative, that the automatic stay should be lifted pursuant to 11 U.S.C. § 362(d). At a hearing held before Judge James L. Garrity, Jr. on November 25 and 26, 1997, MacInnis submitted affidavits and exhibits

---

1. MacInnis paid $1.1 million to his associates, and spent the balance, including $38,000 on an automobile. *See* Goldman Aff. at ¶ 5.

supporting the validity of his bankruptcy petition. MacInnis, who was the only witness at the hearing, testified that his Chapter 11 petition was filed in good faith, and the creditors listed in the petition were not fraudulent. *See* Bankruptcy Hearing, dated November 25, 1997 ("BH") at 34, 73. He also stated that, in the last three years, he has worked on minor deals and collected only nominal income from his business transactions. *See id.* at 57. MacInnis testified that he filed for bankruptcy to reorganize his business. *See id.* at 57. At the hearing, Shanahan submitted into evidence two affidavits by his attorney, Robert E. Goldman, the order of attachment granted by the judge in the state court action, and MacInnis' bankruptcy petition to support his contention that MacInnis filed his petition in bad faith and with the intent to escape the state court litigation. After hearing the testimony, the Bankruptcy Court issued an order in which it declined to dismiss the petition, or lift the stay.

On January 15, 1998, Shanahan filed a timely Notice of Appeal from the Order refusing to lift the automatic stay and denying the motion to dismiss the bankruptcy petition as having been filed in bad faith.[2] On July 21, 1998, this Court denied a motion by MacInnis to dismiss the appeal on the ground that Shanahan failed to timely serve and file his appeal brief and granted Shanahan additional time for submission of the brief. *See In re MacInnis*, 98 Civ. 2894, 1998 WL 409726 (S.D.N.Y. 1998).

## II. Jurisdiction

**Review of Refusal to Lift Automatic Stay**

■ Shanahan appeals the bankruptcy judge's refusal to lift the automatic stay on the ground that the Bankruptcy Court abused its discretion in not finding "cause" to lift the stay under 11 U.S.C. § 362(d).

The "denial of relief from an automatic stay is a final, appealable order." *See In re Megan–Racine Associates, Inc. v. Niagara Mohawk Power Corp.*, 102 F.3d 671, 675 (2d Cir.1996). This Court has jurisdiction to hear appeals from final orders pursuant to 28 U.S.C. § 158(a).

## III. Standard of Review

■ The standard used to review Bankruptcy Court orders is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure:

> On an appeal, the district court or the bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.

Thus, the Bankruptcy Court's findings of fact are reviewed for clear error. *Shugrue v. Air Line Pilots Assn., Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990). Conclusions of law are reviewed de novo. *Id.* Because the decision of whether to lift an automatic stay is committed to the discretion of the bankruptcy judge, a district court may overturn a denial of a motion to lift a stay only upon a showing of abuse of discretion. *See In re Sonnax*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re Ionosphere Clubs Inc.*, 133 B.R. 5, 7 (S.D.N.Y.1991). Although a reviewing judge may not substitute its judgment for that of the bankruptcy court, a finding of an abuse of discretion is proper when the bankruptcy court fails to consider all relevant factors. *See William Gasperini v. The Center for Humanities, Inc.*, 149 F.3d 137, 142 (2d Cir.1998). "A Bankruptcy Court's findings of fact are 'clearly

---

**2.** The motion for Leave to Appeal the denial of the motion to dismiss the bankruptcy petition was pending before the Honorable Denny

Chin, but was reassigned to me in the interests of judicial economy.

erroneous' if the appellate court has a definite and firm conclusion that a mistake has been committed, after reviewing the entire record." *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 847 (E.D.N.Y. 1995).

## IV. Automatic Stay

### A. Purpose of the Stay and Standard for Lifting the Stay

■ The purpose of the Chapter 11 petition is to enable a business or an individual to reorganize and emerge from bankruptcy. *See In re C–TC 9th Avenue Partnership v. Norton Company, Maplewood Colonie Common School, and the Town of Colonie*, 113 F.3d 1304, 1309 (2d Cir.1997). The reorganization process provides the debtor with breathing space during which it can return to a viable state. *Id.* at 1310. Under the Bankruptcy Code, the filing of a Chapter 11 bankruptcy petition automatically stays most judicial actions against the debtor. *See* 11 U.S.C. § 362(a)(1). The effect of the stay is to halt the commencement or continuation of judicial action that was or could have been commenced against the debtor prior to the bankruptcy action. *See id.*

■ Section 362 (d) of the Code states: "The court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party." Section 362(d) of the Code gives the court discretion to "terminate, annul, modify or condition the stay." Because neither the Code nor the legislative history provides a specific definition of what constitutes "cause" under § 362(d), courts must determine whether relief is appropriate on a case by case basis, taking into consideration the interests of the debtor, the claimants and the estate. *See*

*In re Keene Corporation*, 171 B.R. 180, 183 (Bkrtcy.S.D.N.Y.1994).

■ It is well established that a debtor's lack of good faith in filing a petition for bankruptcy constitutes sufficient "cause" to lift the stay. *See In re Sonnax Industries*, 907 F.2d 1280, 1287 (2d Cir. 1990); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bkrtcy.S.D.N.Y.1996) (bad faith filing is an abuse of the judicial process or of the jurisdiction of the bankruptcy court).

### B. Discussion

■ In his motion to lift the stay, Shanahan relies on a number of factors to prove the debtor's bad faith, including: (1) the debtor has one principal asset, the funds attached by Shanahan; (2) he has few unsecured creditors whose claims are de minimis in relation to Shanahan; (3) he has no available sources of income to sustain a plan of reorganization; and (4) he has failed to file a plan of reorganization since he filed for bankruptcy in May of 1997. Shanahan argues that MacInnis' filing was an exercise in forum shopping because the state court's early judgment was adverse to him.

MacInnis argues that the state court action was still in the discovery stage at the time of filing the Chapter 11 petition: depositions were not completed; and a Note of Issue had not been filed. Other than an order of attachment, no substantive determinations were ever made in the state court action.

In a ruling from the bench, the Bankruptcy Court briefly considered the twelve factors set forth in *In re Sonnax Industries* that allow for lifting of the stay. *See* 907 F.2d at 1285.[3] In denying Shanahan's

---

3. The factors that should be considered when deciding to lift the automatic stay are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other pro-

ceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily

motion to lift the stay, the Bankruptcy Court focused primarily on the fact that granting relief would prejudice MacInnis' interests by requiring him to focus on the state court litigation, rather than on reorganization. Additionally, the Bankruptcy Court found that: (1) the State Court is not a specialized tribunal, and the Bankruptcy Court is capable of reviewing and considering state court issues; (2) there is no evidence that the state court litigation was ready for trial; and (3) keeping the case in the bankruptcy court will more effectively balance the interests of Shanahan, MacInnis and the other creditors. Although the Bankruptcy Court did not reach the issue of bad faith in considering whether to lift the stay, in declining to dismiss the petition it held that there was no bad faith.

I find that the bankruptcy court abused its discretion in refusing to lift the automatic stay to allow the state court proceeding between Shanahan and MacInnis to proceed. The totality of the evidence presented to the bankruptcy court below indicates that MacInnis filed his bankruptcy petition not to reorganize his business, but as a tactic to avoid the state court proceedings with Shanahan.

Numerous courts have found bad faith where a debtor possessing a single asset has no realistic chance for rehabilitation of any ongoing business and files a bankruptcy petition in the hopes of gaining relief from another action that essentially involves the resolution of a two-party dispute. *See, e.g., In re C–TC 9th Avenue Partnership*, 113 F.3d at 1311–12; *In re Laguna Assoc. Ltd. Partnership*, 30 F.3d 734, 738 (6th Cir.1994); *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986). Many of the facts that led these courts to find bad faith are present here. MacInnis has one principal asset: the bank account that the state court attached pursuant to Shanahan's lawsuit in the state court proceeding. *See* ROA at 4–6. There are few other creditors, and their claims are de minimis compared to that of Shanahan.[4] *See id.* at 8–9. MacInnis has no employees and minimal cash flow (less than $25,000 in the three years prior to the bankruptcy filing) and no apparent income to sustain a plan of reorganization. *See id.* at 58. He claims that he is a sole proprietor who is engaged in financial transactions in Egypt. He has, however, presented no evidence indicating that he has any personal involvement with

---

involves third parties; (7) whether litigation in another forum would prejudice the interests of the creditor; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expedious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and balance of harms. *In re Sonnax*, 907 F.2d at 1286.

4. Although MacInnis listed a sizeable Internal Revenue Service claim in his petition, this claim is largely contingent on a finding that the assets attached in the state court proceeding belong to MacInnis, and not Shanahan. *See* Affidavit of Robert E. Goldman, dated November 7, 1997 ("Goldman 11/7/97 Aff.") at ¶ 17. Shanahan claims that the entire IRS claim would evaporate if Shanahan were to prevail. *See id.* MacInnis' attorney represented to this Court that although he did not

believe the claim would entirely dissipate if Shanahan prevailed, it would be significantly reduced. MacInnis' attorneys have waived their listed claim for $5,000 in attorney's fees, *see id.* at ¶ 13, and, as discussed below, the claim for rent due on office space is highly suspect. In addition to these claims, MacInnis listed four other unsecured claims: (1) a claim by Coopers & Lybrand LLP for $1,250; (2) a claim by Fox & Fox for legal fees in the amount of $1,828; (3) a claim by Don Rosenthal, Esq. for legal fees in the amount of $10,000 and (4) a claim by Roy Levine for a personal loan in 1995 and 1996 in the amount of $18,000. At the end of 1994 or in 1995, MacInnis had paid Levine $500,000 (of the $1.1 million MacInnis paid to his associates) for his participation in the L & S transaction. *See id.* at ¶ 14; Goldman 7/16/97 Aff. at ¶ 14. In addition to these unsecured claims, MacInnis also listed a claim by his sister, Maureen MacInnis, in the amount of $40,000, which is secured by an automobile valued at $35,000.

these transactions that would allow him to reap income from them. BH at 59–62.

■■■■■ Because MacInnis claims to be a sole proprietor, the fact that he does not have an ongoing business to reorganize is not dispositive on the issue of whether his bankruptcy petition evinces bad faith. *See Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (individual debtor can reorganize under Chapter 11). In seeking the protection of bankruptcy, however, a debtor must have some intention of rehabilitation. *Matter of Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 228 (2d Cir.1991). MacInnis' actions belie this intention.

First, MacInnis failed to comply with the bankruptcy court' order dated May 20, 1997 that a bankruptcy plan was due on September 17, 1997.[5] *See* Docket Sheet, Bankruptcy Petition # 97–43361. Indeed, to this day, almost eighteen months since the court's order, MacInnis has yet to file a plan with the court. At oral argument before this Court, MacInnis' attorney represented that a draft plan had been submitted to the U.S. Trustee's Office for comments prior to the hearing before the bankruptcy court on November 17, 1997. *See* Transcript 11/6/98 ("Tr.") at 12. A copy of a letter provided to this Court by MacInnis' attorney, however, reveals that the plan was not sent to the U.S. Trustee until April 14, 1998, five months *after* the hearing. The letter also reveals that MacInnis made the decision to take no action regarding the plan pending the outcome of the appeal to this Court.

The bankruptcy court, in hearing the testimony and reviewing the evidence, failed to address the fact that MacInnis violated the court's order to file a reorganization plan. Although this is not one of the twelve factors set forth in *Sonnax,* the absence of a plan clearly prejudices the interests of the creditor, and unreasonably prolongs the litigation. Therefore, by failing to address the absence of a reorganization plan, the bankruptcy court did not thoroughly consider two of the twelve factors set forth in *Sonnax,* specifically (10) the interests of judicial economy and the *expeditious and economical resolution of litigation;* and (12) the *impact of the stay on the parties* and the balance of harms. *See In re Sonnax,* 907 F.2d at 1286 (emphasis added).

■■■■ There are other indicia of bad faith present in this case as well. There is evidence that during the course of the state court proceeding, MacInnis' counsel used the threat of bankruptcy as a tactic to pressure Shanahan into accepting a settlement offer. *See* Goldman 7/16/97 Aff. at ¶ 17; *In re Finizie,* 184 B.R. 415, 419 (Bankr.D.Conn.1995) ("bona fides of the debtor's purpose in filing the petition are relevant to the bad faith inquiry"). In addition, MacInnis listed as his third largest debt a claim for unpaid rent on an office in New York City for three years prior to the filing of the bankruptcy petition. *See* BH at 39. However, in an affidavit dated March 31, 1995, submitted in opposition to the issuance of the attachment order in the state proceeding, MacInnis swore that he had no office in New York and did business out of his home in Connecticut. *See* Goldman 11/7/97 Aff. at ¶ 15; ROA at 65. Misrepresentations in a bankruptcy petition clearly evidence bad faith, and the bankruptcy court's failure to address these facts suggests that it did not thoroughly consider all of the relevant facts in evaluating MacInnis' intentions in filing his bankruptcy petition.

5. Under 11 U.S.C. § 1112(b)(4), upon the request of a party in interest, the court may dismiss a bankruptcy petition or convert the case to one under chapter 7 due to a failure to propose a plan within any time limit fixed by the court. *See In re Michalek,* 90 Civ. 1212S, 1991 WL 222063, at *8 n. 4 (W.D.N.Y.1991) (stating that debtor's failure to file plan would be sufficient, by itself, to support conversion under 11 U.S.C. § 1112(b)(4)); *In re Brown,* 97 Civ. 5302, 1998 WL 734701 (E.D.Pa. October 15, 1998) (dismissing bankruptcy petition of sole practitioner for, *inter alia,* delay in filing plan).

In analyzing the *Sonnax* factors, the bankruptcy court also found that there was no evidence that the state court action was ready for trial. Although Shanahan's attorney represented to the bankruptcy court that he was "on the eve" of filing a note of issue in the state action, I cannot find that the bankruptcy court's refusal to credit such representation was an abuse of discretion.

I do find, however, that there is evidence in the record that the litigation had progressed to an advanced state. The litigation had been ongoing for approximately two years prior to the bankruptcy filing. Although MacInnis testified before the bankruptcy court that his deposition in the state court action had never been concluded, *see* BH at 68, transcript pages from that deposition, comprising part of the record below, reveal that the deposition had been concluded, subject to Shanahan's attorney's reservation that he receive outstanding document requests. *See* ROA at 116.[6]

Similarly, I cannot dispute the bankruptcy court's belief that it could address the dispute between Shanahan and MacInnis in a more expeditious fashion than the state court. However, given MacInnis' apparent lack of good faith in filing his petition and the advanced status of the state court litigation, the failure to lift the stay constituted an abuse of discretion. *See In re SB Properties, Inc.*, 185 B.R. 198, 206 (E.D.Pa.1995) ("to permit Appellant to involve the Bankruptcy Court's jurisdiction and use the process for the sole purpose of reaping the benefits of a fast-moving forum, when the record discloses no real motive, intent or ability to reorganize, comes perilously close to placing this Court's imprimatur on Appellant's improper attempt to downright forum shop").

## V. Leave to Appeal

 Shanahan also moves for leave to appeal the Bankruptcy Court's order re-

fusing to dismiss the petition because it was filed in bad faith. Bankruptcy Rule 8001(b) requires an appellant to file "a notice of appeal ... accompanied by a motion for leave to appeal" in order to appeal an interlocutory order of the bankruptcy court, such as a denial of a motion to dismiss a bankruptcy petition.

MacInnis argues that Shanahan's motion for leave to appeal must be denied as he failed to obtain certification by the bankruptcy judge as mandated by 28 U.S.C. § 1292(b) and 28 U.S.C. § 158. Under 28 U.S.C. § 158(a), a district court "shall have jurisdiction to hear appeals ..., with leave of the court, from interlocutory orders and decrees, of bankruptcy judges...."

 The Third Circuit has held that a district court may hear an interlocutory appeal from the Bankruptcy Court without certification by the bankruptcy judge. *See In re Bertoli*, 812 F.2d 136, 140 (3rd Cir. 1987). Other circuits, including this one, have stated, in dicta, that it is within the discretion of the district court whether to hear an appeal of an interlocutory order from the Bankruptcy Court. *See In re Sonnax Industries*, 907 F.2d at 1283 (section 158(a) authorizes district courts to hear appeals from interlocutory orders by discretionary leave of the district court); *In re Holly Flor*, 79 F.3d 281, 283 (2d Cir.1996) (a district court has jurisdiction to hear bankruptcy appeals not only from orders that are final, but also from orders that are nonfinal if taken "with leave of" the district court); *Temex Energy, Inc. v. Underwood*, 968 F.2d 1003, 1005 (10th Cir. 1992) (interlocutory review available upon the district court's certification); *In re Morse Electric Co.*, 805 F.2d 262, 264 (7th Cir.1986) (district courts "may elect to hear interlocutory appeals"); *In re Ryther*, 799 F.2d 1412, 1414 (9th Cir.1986) (district courts "may grant leave" to hear interlocu-

---

**6.** Although MacInnis testified before the bankruptcy court that he had tried, but never succeeded, in taking Shanahan's deposition,

MacInnis' attorney told this Court that two depositions of Shanahan had taken place. *See* BH at 68; Tr. at 22.

tory appeals). Additionally, at least three courts in this district have held that § 158(a) does not require certification by the Bankruptcy Court. *See In re CIS Corp.*, 188 B.R. 873, 878 (S.D.N.Y.1995); *Abel v. Shugrue,* 179 B.R. 24, 28 (S.D.N.Y. 1995); *Gallant v. Kanterman,* 99 B.R. 208, 209 n. 2 (S.D.N.Y.1989), *aff'd* 108 B.R. 432 (S.D.N.Y.1989). Certification by the Bankruptcy Court is not required.

■ The next question, then, is whether leave to appeal should be granted. The majority of courts in this district have applied the standard set forth in 28 U.S.C. § 1292(b) in the context of appeals from bankruptcy courts, and held that a district court may grant leave to appeal an interlocutory order when (1) such an order involves a controlling question of law (2) over which there is substantial ground for difference of opinion, and (3) if an immediate appeal would materially advance the ultimate termination of the litigation. *See Back v. LTV Corp. (In re Chateaugay Corp.),* 213 B.R. 633, 636 (S.D.N.Y.1997); *United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re United States Lines, Inc.),* 199 B.R. 465, 471 (S.D.N.Y.1996); *In re Johns–Manville Corp.,* 47 B.R. at 960.

■ The granting of leave would materially advance the ultimate termination of this litigation. In addition, the question of whether MacInnis' actions, including his failure to comply with a court order to file a bankruptcy plan, constitute bad faith is a controlling question of law over which there is substantial ground for difference of opinion. Therefore, I accept leave to appeal the Bankruptcy Court's Order declining to dismiss the bankruptcy petition.

■ Having accepted the appeal, I reverse the Bankruptcy Court's decision and dismiss MacInnis' bankruptcy petition because it was filed in bad faith. A finding that a bankruptcy petition was filed in bad faith is grounds for dismissal of that petition. *See In re C–TC 9th Avenue Partner-*

*ship,* 113 F.3d at 1312. The parties have not yet had an opportunity to brief the issue of dismissal of the petition. However, the question of whether the stay should be lifted and whether the petition should be dismissed involve the same issue: whether MacInnis filed his petition in bad faith. The standard for determining bad faith is the same in both circumstances. *See In re Eatman,* 182 B.R. 386, 392 (Bankr.S.D.N.Y.1995) (same test for bad faith).

The parties have had a full opportunity to brief and argue the question of MacInnis' bad faith. To require them to rebrief the same issue again would elevate form over substance.

## VI. Conclusion

For the reasons set forth above, the Bankruptcy Court's Order declining to lift the automatic stay and its decision not to dismiss the petition are reversed.