**In re Willie B. JACKSON, Jr., Debtor.**

No. 00–7744–3F7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 14, 2000.

Richard R. Thames, Jacksonville, FL, for Worth Avenue Financing, Inc.

Lisa C. Cohen, Gainesville, FL, for debtor.

Gordon P. Jones, Jacksonville, FL, Chapter 7 Trustee.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion to Dismiss filed by Worth Avenue Auto Financing, Inc. ("Worth Avenue") on November 7, 2000. (Doc. 25.) Willie B. Jackson, Jr. ("Debtor") responded on November 9, 2000. (Doc. 29.) On November 29, 2000, the Court held a hearing on the Motion to Dismiss and took the matter under advisement. Upon review of the evidence presented and of the arguments of counsel, the Court denies Worth Avenue's Motion to Dismiss.

### FINDINGS OF FACT

On February 12, 1999, Debtor, a wide receiver for the New Orleans Saints Ltd. ("Saints"), a National Football League ("NFL") franchise, agreed in a Promissory Note to pay Nick D. Middlebrooks ("Middlebrooks") $25,000.00 for one share of stock in Nick's Auto Wholesale, Inc. ("Nick's Auto").

On February 22, 1999, Worth Avenue, an auto dealership floorplan financier, and Nick's Auto entered into a Flooring Re-

volving Credit Note. The Note provided $300,000.00 for Debtor and Middlebrooks to open and begin operating Nick's Auto. Nick's Auto separately granted Worth Avenue a lien on all of its assets as security for the Note ("the Security Agreement"). Debtor also personally guaranteed the Note indebtedness.

On August 6, 1999, the Fourth Judicial Circuit Court in and for Duval County, Florida entered a Final Judgment against Debtor and Nick's Auto in favor of Middlebrooks for $27,603.09. Apparently Debtor never paid Middlebrooks anything for the share of Nick's Auto stock. It is unclear whether Middlebrooks or Debtor or both managed Nick's Auto from this point onward.

The relationship between Worth Avenue and Debtor soured quickly. By September 1999, thanks to a fairly cavalier attitude toward collateral preservation, Nick's Auto fell into default on the Note and on the Security Agreement.

On September 16, 1999, Debtor, Nick's Auto and Worth Avenue entered into a Forebearance Agreement in order to avoid litigation and settle defaults. (Worth Avenue's Ex. 1.) In the Forebearance Agreement, Nick's Auto admitted to pocketing proceeds from the free-and-clear sale of vehicles encumbered by Worth Avenue's blanket lien without remitting or at least setting aside Worth Avenue's share. Nick's Auto admitted that it had failed to sufficiently explain the disappearance of some encumbered vehicles from its lot. Nick's Auto admitted that it failed to make some rollover payments in violation of the Security Agreement. Nick's Auto admitted that it kept some automobiles off the lot in violation of the Security Agreement. Finally, Nick's Auto admitted that it failed to keep some vehicles insured as mandated by the Security Agreement.

In exchange for settling these breaches without litigation, Nick's Auto agreed to allow Worth Avenue to directly collect pay-

ments under some sales contracts. Nick's Auto further agreed to turn over $54,238.27 in cash in $1,750.00 monthly installments for vehicles sold without accounting for Worth Avenue's lien. Nick's Auto agreed to insure all vehicles in stock. Finally, Nick's auto agreed to devote its income to paying off Worth Avenue's loan, which had a principal balance of about $250,000.00 in August 1999.

Debtor agreed in the Forebearance Agreement to surrender a 1992 Lexus in his possession to Worth Avenue for liquidation and payment on the principal due. Debtor further agreed to begin making payments on a 1997 Ford Expedition in his possession and a 1994 BMW that Debtor gave to his attorney, Earl Johnson.

It is unclear exactly how much control, if any, Debtor had over Nick's Auto during the period of initial default and at entry of the Forebearance Agreement. Neither party presented any evidence on this point, although Worth Avenue's argument assumes of and hinges on Debtor's participation in Nick's Auto's malfeasance.

Worth Avenue's president, Edward Buttner IV ("Buttner")[1], testified that Nick's Auto and Debtor disregarded the Forebearance Agreement as soon as they signed it. The situation rapidly deteriorated into a collection scrum. Nick's Auto neglected to make the payments for cars sold free of Worth Avenue's lien and payments on the Note principal in violation of the Forebearance Agreement. Debtor failed to make payments on the vehicles in his possession and refused to hand them over to Worth Avenue as agreed. Buttner testified that Debtor and his father attempted to collect accounts receivable, also a violation of the Forebearance Agreement.

Worth Avenue sought to repossess the vehicles and attempted to garnish Debtor's paychecks from the Cincinnati Bengals NFL franchise ("Bengals"), then Debtor's employer. Buttner testified that it took

---

1. Buttner was the only witness called to testi-

fy at the November 29, 2000 hearing.

Worth Avenue eight weeks to repossess the BMW given by Debtor to his attorney. The Ford Expedition driven by Debtor turned up stripped of chairs, wheels and dashboard in a Cincinnati body shop.

For forty days, Debtor avoided service of Worth Avenue's collection complaint and summons in his erstwhile hometown of Gainesville, Florida, and finally had to be served through the Bengals in Cincinnati.

Buttner also testified that Debtor spent about $7,000.00 on jewelry, paid down $15,000.00 on his homestead mortgage, and gave $5,000.00 to his youth foundation in the two months before and after execution of the Forebearance Agreement.

On March 27, 2000, the Fourth Judicial Circuit Court in and for Duval County, Florida entered a Final Judgment against Debtor in favor of Worth Avenue in the amount of $162,207.50. (Worth Avenue's Ex. 2.)

Buttner testified that Worth Avenue successfully garnished Debtor's paycheck from the Saints, Debtor's current employer, from early summer 2000 until September 2000.

On October 6, 2000, Debtor filed a voluntary petition for protection under Chapter 13 of the Bankruptcy Code. (Doc. 1.) Debtor filed schedules D, E, and F with the petition. (Doc. 2.)

According to Debtor's Schedule F, Debtor owes $292,211.56 in unsecured, nonpriority claims. Debtor valued Worth Avenue's claim at $170,428.90. Debtor also lists an unsecured, nonpriority debt owed to Buttner for $18,525.00.

On October 11, 2000, Worth Avenue commenced an adversary proceeding, Adv. No. 00–319, against the Saints. (Doc. 6.) Worth Avenue sought to force the Saints to place Debtor's paycheck into the registry of the Court for safekeeping.

On October 12, 2000, the Court entered an Order of Impending Dismissal based upon Debtor's failure to file Schedules A, B, C, G, H, I, and J. (Doc. 8.) The Court also threatened dismissal for Debtor's failure to file a proposed Chapter 13 plan.

On October 17, 2000, the Court entered a Notice of Conversion of Debtor's Case from Chapter 13 to Chapter 7. (Doc. 13.)

On October 24, 2000, Worth Avenue filed a Proof of Claim for $192,462.23. (Cl.1.)

On October 27, 2000, Middlebrooks filed a Proof of Claim for $25,558.20. (Cl.2.)

On November 7, 2000, Worth Avenue filed the Motion to Dismiss Chapter 7 Case now before the Court. (Doc. 25.)

Worth Avenue argues that Debtor's Case should be dismissed for "cause" under 11 U.S.C. § 707(a). Worth Avenue suggests that Debtor's late filing of schedules A, B, C, G, H, I, and J constitutes sufficient "cause." Worth Avenue further asserts that Debtor's efforts to avoid Worth Avenue's collection efforts and Debtor's ample disposable income also constitute "cause."

Worth Avenue argues that creditors will receive nothing unless the Court dismisses Debtor's Case in time for Worth Avenue to garnish Debtor's salary. Debtor only receives paychecks during the National Football League regular season, which ends December 24, 2000.[2]

On November 9, 2000, Debtor responded to Worth Avenue's Motion to Dismiss. (Doc. 29.)

Debtor argues that any filing delays in his Case could be ascribed to his hectic schedule as a professional football player and consequent lack of contact with his attorney.

Debtor summarily disputes Worth Avenue's version of the events and argues that the issues raised by Debtor's prepetition

---

**2.** The Court notes that the New Orleans Saints, although a greatly improved team, have yet to clinch a playoff spot as of this date. Neither party presented any evidence as to Debtor's payoff pay or bonuses.

behavior should be resolved in trial form at a later date.

On November 28, 2000, on the day of his § 341 meeting and on the day before the hearing on the Motion to Dismiss, Debtor filed the missing schedules A, B, C, G, H, I, and J with the Court. (Doc. 33.) Debtor' Schedule I indicates that he takes home about $65,174.69 per month. Debtor's Schedule J indicates that Debtor's total monthly expenses amount to $9,764.00.

According to Debtor's Schedule J, he does not pay any alimony or support to his ex-wife or two children. Debtor does pay $150.00 in support to miscellaneous dependents.

On November 29, 2000, Debtor amended his Statement of Financial Affairs to indicate that he earned $50,000.00 from the Saints from January 2000 until November 2000. (Doc. 36.) The Amended Statement of Financial Affairs also declares that Debtor received a $69,097.00 income tax refund for 1999. Debtor finally admits that the Bengals paid him $421,711.00 in 1999. Debtor also admits that a child support and alimony lawsuit brought against him by his ex-wife is currently pending in Alachua County, Florida.

On November 29, 2000, this Court held a hearing on the Motion to Dismiss and took the matter under advisement.

### CONCLUSIONS OF LAW

**I. Dismissal for "cause" under § 707(a)**

Worth Avenue's sole contention is that Debtor's failure to timely file his schedules, his evasion of Worth Avenue's collection efforts, and his large income cumulatively or individually constitute "cause" for dismissal under § 707(a).

Section 707(a) provides, in relevant part:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a) (2000). Congress did not intend for the grounds listed in § 707(a) to be exclusive. *See In re Young,* 92 B.R. 782, 784 (Bankr.N.D.Ill.1988). Section 521(1) provides, in relevant part:

The debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs . . .

11 U.S.C. § 521(1) (2000).

Dismissal under § 707(a) is subject to a bankruptcy court's sound discretion. *See Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 624 (9th Cir. BAP 1995). This discretion is not unfettered, however. First, a debtor's case should not be dismissed solely because dismissal does not substantially prejudice a debtor or because a balancing process favors creditors. *See id.* at 626. Nor should a debtor's case be dismissed solely because a debtor may be able to pay creditor's claims in full. *See In re Young,* 92 B.R. at 784. "Creditor's frustration and disappointment at not having her claim paid cannot serve as the basis for denying debtor her right to use Chapter 7." *Id.* It is also well established that the delay ground of § 707(a)(1) contemplates dismissal based on postpetition delay, not on prepetition hindrance of collection by a debtor. *See In re Lang,* 5 B.R. 371, 374 (Bankr.S.D.N.Y.1980).

## II. Application to the instant case

Worth Avenue brings forth a two-pronged argument in favor of dismissal. First, Worth Avenue argues that Debtor's prepetition and postpetition behavior indicates unwillingness to cooperate with creditors and disrespect for this Court. Second, Worth Avenue argues that creditors will be prejudiced if Debtor's case is not dismissed by the end of the NFL season, when Debtor's salary stops rolling in. Worth Avenue's arguments imply that creditors have a much greater chance of collecting from Debtor's income than from Debtor's assets.

The Court will address these contentions separately for ease of analysis, but notes that the two should not be thought of as legally exclusive. The Court in the instant case finds the individual grounds and cumulative effect both insufficient for § 707(a) dismissal, but does not rule out the possibility that the cumulative effect of several insufficient particular grounds may in some situations constitute sufficient "cause."

### A. Debtor's prepetition avoidance of service and repossession and postpetition tardy filing of schedules: "cause"?

The Court finds that Debtor's prepetition and postpetition behavior does not constitute "cause" for dismissal under § 707(a).

■ The Court first finds that any successful motion to dismiss for delay as "cause" must be grounded on allegations of post-petition hindrance by a debtor, rather than on prepetition avoidance of service or prepetition avoidance of repossession. The Court is concerned here with "cause" to dismiss a bankruptcy, not with cause to impose a contempt of judgment order. Only bankruptcy behavior will be considered in evaluating whether Debtor sufficiently abused or plans to abuse the bankruptcy system. Therefore, the Court will not consider Debtor's dodging of service or his alleged stripping and selling of the Ford Expedition part by part. These acts may be relevant to an objection to discharge or exception from discharge, or even to a criminal prosecution for bankruptcy crimes. However, they are not relevant to the § 707(a) dismissal inquiry.

■ The Court also finds that the postpetition delay caused by Debtor's failure to timely file schedules does not constitute sufficient "cause" for dismissal at this time. Debtor's unique working situation and schedule sufficiently justify delay in filing the schedules for § 707(a) purposes. The Court acknowledges that Debtor's late filing of schedules may have dampened spirited questioning at Debtor's § 341 meeting and may have impeded Worth Avenue's preparation for the hearing on its Motion to Dismiss. However, Worth Avenue may request a Rule 2004 examination, as at least one other creditor has. Worth Avenue may file an adversary objection to discharge and force Debtor to appear at deposition. Worth Avenue may serve a subpoena on Debtor and file a motion for Contempt and Sanctions if Debtor does not comply. Worth Avenue may not get Debtor thrown out of Chapter 7 before attempting those remedial information-gathering measures.

### B. Debtor's large income and consequent ability to pay creditors: "cause"?

■ The Court finds that Debtor's large monthly salary and his consequent ability to pay creditors do not constitute "cause" for dismissal under § 707(a). Section 707(b) provides for dismissal for "substantial abuse" based on ability to pay, and such motions to dismiss must be brought by the United States Trustee.

Additionally, the Court feels that the Chapter 7 Trustee should have an opportunity to find and size up Debtor's assets before a single creditor, albeit one holding a majority of Debtor's unsecured debt such as Worth Avenue, imposes its conclusions

on the extent of Debtor's assets upon the whole Case.

### C. Cumulative effect of delay and ability to pay: "cause"?

For the same reasons noted above, the Court finds that the cumulative effect of Debtor's postpetition delay and ability to pay does not constitute sufficient "cause" for § 707(a) dismissal. Debtor's postpetition delay in filing schedules did not cause significant prejudice, and Debtor's ability to pay is not a significant factor in determining "cause" under a § 707(a) motion to dismiss filed by a creditor.[3]

### CONCLUSION

The Court recognizes that Worth Avenue is frustrated. However, Worth Avenue must recognize that it is not the first frustrated creditor in the history of the Bankruptcy Code, nor will it be the last. Worth Avenue's interest in instant gratification does not trump Debtor's fresh start interest or the interests of other creditors at this early stage. Worth Avenue requests that this Court restart the "race to the courthouse" halted by Debtor's bankruptcy filing. This pause allows a Chapter 7 trustee to act in the interest of all creditors. The Court will not deprive Debtor's other creditors of this fair and equal treatment based on Worth Avenue's assertions that those other creditors are destined to be denied distribution.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.

---

**3.** The Court notes that ability to pay is a significant factor in determining "substantial abuse" for purposes of a § 707(b) motion to dismiss. Only the United States Trustee may file a § 707(b) motion to dismiss.