**In re Nichita Marius BUCURESCU, et ano., Debtors.**

**Nichita Marius Bucurescu, et ano., Plaintiffs-appellants,**

v.

**190A Realty Corp., et al., Defendants-appellees.**

No. 02 Civ.3423 LAK.
Bankruptcy No. 99 B 43382(CB).
Adversary No. 01–08085.

United States District Court, S.D. New York.

Aug. 19, 2002.

Nichita Marius Bururescu, Doina M. Bucurescu, Appellants pro se.

Lawrence W. Farkas, Gleich, Siegel & Farkas, Great Neck, NY, for Appellees.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The Bankruptcy Judge, confronted with difficult, inarticulate and unschooled *pro se* litigants who in all probability have no legitimate grievance, imposed sanctions upon them and, upon their failure to pay, dismissed the matter without further notice or opportunity to be heard. While a good deal of frustration with appellants is entirely understandable, the question whether the actions below may stand is substantial.

*Facts*

This notice of appeal, filed March 5, 2002, describes the "Court Order" appealed from as that "based on The Affidavit of Non Compliance filed on February 23, 2002 and on the Decree entered on January 23, 2002. This Order, To Dismiss the Bankruptcy Case Chapter 7, Index No: 99 b 43382(CB) for 180 days with prejudice and payment of $2,199.08 which is appealed here does not express or present the correct facts." In order to determine precisely what has been appealed therefore requires a certain amount of archeology.

*The Underlying State Court Litigation*

The debtors were the principals of Rumican 190 Corp. ("Rumican"), a New York corporation that owned an apartment building located at 602 W. 190th Street in New York City (the "Building"). In 1992, Union Chelsea Bank ("Union Chelsea") commenced a foreclosure action against Rumican and the debtors individually based upon mortgage defaults. In September 1995, during the pendency of that action, Union Chelsea assigned the mortgages encumbering the Building to appellee, 190A Realty Corp. ("190A"), and the New York Supreme Court granted 190A's motion to be substituted as party plaintiff.[1]

A foreclosure sale was held on March 29, 1996, and 190A acquired title to the Building pursuant to the referee's deed on December 13, 1996.[2] The Supreme Court confirmed the foreclosure sale, and 190A obtained a deficiency judgment in the amount of $1,032,689.80 plus interest against Rumican and the debtors.[3] The First Department reduced the deficiency

---

1. *Union Chelsea Nat'l Bank v. Rumican 190 Corp.*, No. 18208/90 (N.Y.Sup.Ct. Feb. 22, 1996) (Appellees' Br. Ex. 3).

2. A copy of the deed was annexed to the complaint in *Bucurescu v. 190A Realty Corp.*, No. 01–08085 (Bankr.S.D.N.Y.2001).

3. Final Judgment, *190A Realty Corp. v. Rumican 190 Corp.*, No. 90/18208 (N.Y.Sup.Ct. Sept. 11, 1997) (Appellees' Br. Ex. 1).

judgment to $954,418.75 plus interest and affirmed the confirmation of the foreclosure sale.[4]

*The Proceedings Below*

The debtors, proceeding *pro se,* have filed three bankruptcy petitions since commencement of the foreclosure action. The most recent, and that at issue here, is a voluntary petition under Chapter 13, filed on May 25, 1999. The debtors subsequently converted the case to one under Chapter 7 and commenced an adversary proceeding against 190A and Lawrence and Jeffrey Farkas (collectively, the "Defendants") on May 11, 2001. The complaint alleges various forms of misconduct in connection with the Building and ongoing litigation between the parties.[5]

On June 11, 2001, the Defendants moved (1) to dismiss the complaint in the adversary proceeding pursuant to Bankruptcy Rules 7010 and 7012(b), (2) to enjoin the debtors from relitigating claims against them, and (3) "for sanctions pursuant to Bankruptcy Rule 7011 [*sic*] and for contempt for violating a court order."[6] They contended that (a) the claims in the complaint were barred by *res judicata,* (b) the debtors already had been sanctioned by the New York Supreme Court and warned by various federal district and bankruptcy judges that they would be sanctioned for engaging in repetitive frivolous litigation, and (c) the commencement of the adversary proceeding violated the final decree of a bankruptcy judge (other than the one whose actions are at issue here), which enjoined the institution of claims against 190A.[7]

The parties appeared before the judge below on June 27, 2001. Defendants there drew the court's attention to various state and federal court orders attached to its notice of motion that, they argued, disposed of the issues raised in the complaint adversely to the debtors.[8] The debtors argued in response that they had not litigated the issues raised in the complaint, at least not in federal court.[9]

When the bankruptcy judge questioned Mr. Bucurescu about the court documents submitted by the Defendants, he suggested that one of the orders was "false."[10] The following colloquy ensued:

"THE COURT: "Why? Was it issued by the Court? Was that judgment issued by the Court?

"You know what, I tell you what I'm going to do. As far as the sanctions request I am going to deny it unless you make him—excuse me, sir. Did you have this judgment certified by the Court that issued the judgment?"

"MR. FARKAS [Defendants' counsel]: I probably did. I am sure I have a transcript of the judgment back in my office.

"THE COURT: Fine. If—that's enough.

"If I have to go forth and have him certify each document that you indicate is false, there are going to be sanctions against you for the cost of certifying it. Not only the cost of certifying it, but for

---

4. *See Union Chelsea Nat'l Bank v. Rumican 190 Corp.,* 257 A.D.2d 463, 683 N.Y.S.2d 530 (1st Dept.1999), *leave to appeal dismissed in part and denied in part,* 93 N.Y.2d 989, 695 N.Y.S.2d 742, 717 N.E.2d 1079 (1999).

5. *See* Complaint, *Bucurescu v. 190A Realty Corp.,* No. 01–8085 (Bankr.S.D.N.Y. May 10, 2001) ("Cpt.").

6. Farkas Aff. ¶ 2.

7. *See* Appellees' Brief, at 5–6.

8. *See* Tr., June 27, 2001, at 3.

9. *See id.* at 4.

10. *Id.* at 7.

the attorney time it took to have those documents certified.

"MR. BUCURESCU: Your Honor—

"THE COURT: Excuse me. Do you understand what I am telling you?

"MR. BUCURESCU: Yeah. But I can't—

"THE COURT: Now, if you do that, then we're going to adjourn this hearing until such time that he can bring me certified copies of each document that he has in his possession. And if those documents were certified previously and are actually true, that is going to cost you the cost of certification along with the cost of certifying it, which is attorney time. He will, on his hourly rate, he will get—why don't you let me finish?

"On his hourly rate he will get whatever time it takes him to do that.

"Now, do you wish to still maintain that the documents he has attached to his motions are false? Because if you do, we're going to adjourn this hearing to have him certify it.

"MR. BUCURESCU: Let me—but that is not the only situation.

"THE COURT: It is for me.

"MR. BUCURESCU: He doesn't have documents.

"THE COURT: Excuse me, you are over there. I am over here. I make the directions. You don't.

"Now, if you want to proceed with your argument that those documents are false, I am going to have him certify each document that you claim is false.

"Are all of the documents in his motion false? Yes or no?

"MR. BUCURESCU: They do not exist, most of them.

"THE COURT: If they do not exist, then either they do not exist or they are false; that's your argument, right?

"MR. BUCURESCU: No, no.

"Your Honor, why don't you let me talk?

"THE COURT: Because I have heard you long before this.

"Excuse me. Why don't you let me finish?

"Answer my question, yes or no.

"Now, are all of the documents either false or either does [*sic*] not exist? Yes or no? Yes or no?

"MR. BUCURESCU: Yes.

"THE COURT: Fine.

"Then what we will do, we will adjourn this matter out to a date that is convenient to all of the parties[,] and he will have an opportunity to certify each document. If he can certify those documents, they will be at your cost.

"MR. FARKAS: Your Honor, with all due respect, if the debtor is bankrupt and has hid his assets, as has been brought before you, how would a sanctions order—

"THE COURT: Because of the fact his Chapter 7 basically—the only reason he didn't complete his [Chapter] 13 is because he didn't have enough funds to complete his Chapter 13, but under Chapter 7 he doesn't have to pay anyone. And, guess what? One of the sanctions is going to be for either, and you can give me an order to this effect, either the debtor will pay the sanctions or have his case dismissed with prejudice without the ability to file in any other court in the United States." [11]

The Bankruptcy Court then adjourned the matter until August 15, 2001, although

---

11. *Id.* at 7–11.

there is no indication in the record that a hearing was held on that date.[12]

In early September 2001, the Defendants submitted certified copies of the orders and a bill for their costs [13] as well as a proposed order setting out their suggested ruling on the motion to dismiss the adversary proceeding.[14] As far as the record reveals, the case then lay dormant for some time.

*The January 22 Order*

On January 22, 2002, the Bankruptcy Court issued an order (the "January 22 Order"), which dismissed the adversary proceeding with prejudice and ordered the debtors to pay sanctions. It began by recounting the events of the June 27, 2001 hearing and contained the following recitals:

"WHEREAS, the Court, upon receiving certification, has reviewed the various court documents submitted by defendants and finds that the claims that the Plaintiffs attempt to raise in the adversary proceeding have been raised ad nauseum in state court without success; and

"WHEREAS, the Court has reviewed all of the responsive pleadings submitted by Plaintiffs and finds that they are without merit; and

"WHEREAS, the Defendants have established that the Court documents are not false as alleged by Plaintiffs...." [15]

It then ordered them to pay $2,199.08, as reimbursement for the fees and costs in obtaining certified copies of the documents claimed to be false, to the Defendants'

attorneys within five days. It directed also that, if the debtors did not pay the sanctions within that time, counsel for the Defendants "shall submit an Affidavit of Noncompliance and an Order dismissing Debtors' Chapter 7 proceeding with prejudice and the Debtors will be prohibited from filing a petition under any chapter under the Bankruptcy Code, anywhere in the United States, for a period of 180 days from the date of this Order pursuant to section 109(g)(1)." [16]

*The March 26 Order*

The debtors did not pay the sanctions. Counsel for the Defendants executed an affidavit of noncompliance on February 22, 2002. While no filing date is listed on the Bankruptcy Court's electronic case file system for this affidavit, the Bankruptcy Court attached it to the March 26, 2002 order dismissing the debtors' Chapter 7 case (the "March 26 Order"), and the debtors refer to it in their notice of appeal as having been "filed" on February 23, 2002.

The March 26 Order is one page long, and the Bankruptcy Court gave the following explanation for its ruling:

"The debtors having failed to comply with this Court's order dated January 22, 2002 and upon the Affidavit of Noncompliance of Lawrence W. Farkas, sworn to on February 22, 2002 and upon all the proceedings heretofore had herein, it is [ordered that the Chapter 7 proceeding is dismissed with prejudice, debtors are prohibited from filing for a period of 180 days pursuant to 11 U.S.C. § 109(g)(i), and in the event that debtors

---

12. *Id.* at 13.

13. The Defendants claimed total costs of $2,199.08—$1,855.00 in attorneys' fees and $344.08 in clerical, ministerial, and archival expenses. *See* exhibits attached to Farkas Supp. Aff.

14. *See* Farkas Supp. Aff. ¶¶ 6–7.

15. January 22 Order, at 3, *Bucurescu v. 190 Realty Corp.*, Adv. Proc. No. 01–8085 (Bankr. S.D.N.Y.2002).

16. *See id.*

file any bankruptcy petition in the future, the automatic stay will not apply to 190A]." [17]

### Discussion

*Jurisdiction*

■ The debtors [18] filed their notice of appeal on March 5, 2002, which appears to have been twenty-one days before the Bankruptcy Court dismissed their Chapter 7 case. Defendants therefore argue that they never appealed the dismissal of the Chapter 7 case and that this Court lacks jurisdiction to review the March 26 Order. The Court disagrees with respect to the March 26 Order and *sua sponte* addresses its ·jurisdiction to review the January 22 Order.[19]

Bankruptcy Rule 8002(a) was amended in 1991 to provide that "[a] notice of appeal filed after announcement of a decision or order but before the entry of the judgment, order, or decree shall be treated as filed after such entry and on the date thereof." [20] The purpose of this amendment was "to conform with [Rule] 4(a)(2) which is designed to avoid the loss of the right to appeal when a notice of appeal is filed prematurely." [21] Rule 4(a)(2) of the Federal Rules of Appellate Procedure "recognizes that, unlike a tardy notice of appeal, certain notices do not prejudice the appellee and that the technical defect of prematurity therefore should not be allowed to extinguish an otherwise proper appeal." [22]

The debtors' confusion regarding the proper time to file a notice of appeal regarding dismissal of their Chapter 7 case was entirely reasonable given that the court below already had announced its intention to dismiss the Chapter 7 case automatically upon receipt of Defendant's affidavit of noncompliance and that this triggering event had come to pass as of the time of their filing.[23] Moreover, Defendants suffered no meaningful prejudice due to the premature filing because the debtors' notice of appeal, fairly construed, expresses an intent to appeal the dismissal of its Chapter 7 case.[24] Accordingly,

---

17. March 26 Order, *In re Bucurescu*, No. 99–B–43382 (CB) (Bankr.S.D.N.Y.2002).

18. Although only Mr. Bucurescu signed the notice of appeal, his signature is sufficient to invoke the Court's jurisdiction with respect to Mrs. Bucurescu as well, despite the proscription against *pro se* litigants representing other individuals. *See* FED. R.APP. P. 3(c)(2) ("A pro se notice of appeal is considered filed on behalf of the signer and the signer's spouse and minor children (if they are parties), unless the notice clearly indicates otherwise."); *Becker v. Montgomery*, 532 U.S. 757, 766–67, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001).

19. Appellees assume that the Court possesses jurisdiction over the latter order. It is axiomatic, however, that the parties cannot waive a defect in the Court's appellate jurisdiction. *Kamerling v. Massanari*, 295 F.3d 206, 212–13 (2d Cir.2002); *Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 323 (2d Cir.2001).

20. FED. BANKR. R. 8002(a); *see In re Arrowhead Estates Dev. Co.*, 42 F.3d 1306, 1310 (9th Cir.1994).

21. FED. BANKR R. 8002(a) advisory committee's note to 1991 amendment.

22. *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 273, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991).

23. *See, e.g., id.* at 276–77, 111 S.Ct. 648 (indicating that Appellate Rule 4(a)(2) requires a reasonable though mistaken belief on the part of appellant that the nonfinal decision appealed from was final).

24. *See, e.g., In re C.R. Davidson Co.*, 232 B.R. 549, 551–52 (2d Cir. BAP 1999) (notice of appeal from nonfinal memorandum decision deemed filed on date of subsequent final order because the defect was neither misleading nor prejudicial); *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,*

the March 5, 2002 notice of appeal was sufficient to trigger the Court's jurisdiction with respect to the March 26 Order.

■ Fairly construed, the notice of appeal expresses an intent also to appeal the January 22, 2002 Order imposing sanctions upon the debtors.[25] However, appellants did not file the notice of appeal with the clerk of the Bankruptcy Court until March 5, 2002, and it was therefore untimely with respect to the January 22 Order.[26] While the requirements of Appellate Rules 3 and 4 generally are construed liberally, the Court has no authority to excuse untimely filing of a notice of appeal.[27] Accordingly, the Court lacks jurisdiction to review the January 22 Order.[28]

### Dismissal of Chapter 7 Case [29]

■ Section 707(a) of the Code states that the Bankruptcy Court "may dismiss a

---

921 F.2d 409, 412–13 (2d Cir.1990) (Appellate Rule 3(c)'s requirement that notice of appeal must "designate the judgment, order, or part thereof being appealed" is to be construed liberally).

**25.** *See State Trading Corp. of India, Ltd.,* 921 F.2d at 412–13.

**26.** FED. BANKR. R. 8002(a) ("The notice of appeal shall be filed with the clerk within 10 days of the date of entry of the judgment, order, or decree appealed from."); *see also* 28 U.S.C. § 158(c)(2) ("An appeal under subsections (a) and (b) of this section [bankruptcy appeals] shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.") Appellants filed a notice of appeal with the district court on March 3, 2002, which also is untimely. *See* FED. BANKR. R. 8002(a) ("If a notice of appeal is mistakenly filed with the district court . . . , the clerk of the district court . . . shall note thereon the date on which it was received and transmit it to the clerk [of the bankruptcy court] and it shall be deemed filed with the clerk on the date so noted.").

**27.** FED. BANKR. R. 8001(a) ("An appellant's failure to take any step *other than timely filing of a notice of appeal* does not affect the validity of the appeal . . . .") (emphasis added); *see Lee v. Sapir,* No. M–47, 2002 WL 126832, at *1 (S.D.N.Y. Jan.29, 2002) ("The case law is clear that strict adherence to the ten day appellate time in the bankruptcy context is required."); *In re Wechsler,* 246 B.R. 490, 492 (S.D.N.Y.2000) ("The district courts do not have jurisdiction to review an order of the Bankruptcy Court if the notice of appeal is not timely filed.").

**28.** Defendants' brief seeks an order enjoining the debtors from pursuing claims against them in the future despite the fact that they requested this relief below, their motion was disposed of without granting such relief, and they failed to appeal either of the relevant orders. While the Court could exercise "pendent appellate jurisdiction" to decide this issue, *see, e.g., Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 449 (2d Cir.1995), *cert. denied,* 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997), such an exercise is discretionary, *see Golino v. City of New Haven,* 950 F.2d 864, 868–69 (2d Cir.1991), *cert. denied sub nom. Lillis v. Golino,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992), and the Court declines to do so in light of the truncated nature of the proceedings below and the district court's failure even to address this issue.

> Defendants argue also that the debtors' appeal should be dismissed as moot under *In re Chateaugay Corp.,* 988 F.2d 322 (2d Cir. 1993). None of their arguments convince the Court, however, that by failing to obtain a stay the debtors have permitted " 'such a comprehensive change of circumstances to occur as to render it inequitable' for the appellate court to reach the merits of the appeal." *Id.* at 325 (quoting *In re Crystal Oil Co.,* 854 F.2d 79, 82 (5th Cir.1988), in turn quoting *In re Roberts Farms, Inc.,* 652 F.2d 793, 798 (9th Cir.1981)).

**29.** The Court need not determine the validity of the January 22 Order in order to review the March 26 Order because the latter could still be valid notwithstanding the invalidity of the former. *See McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("An order issued by a court must be obeyed, even if it is later shown to be erroneous. If a person to whom a court

case under this chapter only after notice and a hearing and only for cause...."[30] The words "after notice and a hearing" are construed under Section 102(1) to mean such notice and opportunity for a hearing "as is appropriate in the particular circumstances."[31] The particular circumstances of every motion to dismiss include the fact that dismissal is one of the most critical determinations to be made in a Chapter 7 case, affecting the vital interests of all parties.[32] Section 102(1)(B) makes clear that an actual hearing may be omitted only "if such notice is given properly" and if a hearing is not requested in a timely fashion by a party in interest.[33] To evaluate the adequacy of notice, "[c]ourts must look to the totality of the circumstances in determining whether notice was reasonable."[34] A key aspect of this inquiry is "whether notice was given in time for the

aggrieved party to take meaningful action in response to the impending deprivation of rights."[35]

■ In this case, the Bankruptcy Court did not provide the debtors with a meaningful opportunity to be heard with respect to the impending dismissal. There was no motion for dismissal, as required by Bankruptcy Rules 1017 and 9014.[36] The court did not inform the *pro se* debtors that a hearing regarding whether dismissal would be a sanction appropriate for failure to pay the monetary sanctions might be available or identify for them the Code provision under which the action would be dismissed.[37] Rather, it treated as a foregone conclusion that failure to obey its order, regardless of the reasons, would result in dismissal.[38]

---

directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." (internal quotation marks omitted)); *cf. Walker v. City of Birmingham,* 388 U.S. 307, 315–21, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (petitioners were properly convicted of criminal contempt and were not entitled to have constitutional objections to injunction heard when they failed to seek review of injunction before violating it). *But see Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 222 F.3d 52, 62 (2d Cir.2000) (indicating that district court should not have dismissed action pursuant to Rule 41(b) for failure to comply with sanctions order determined to have been erroneous by appellate court).

30. 11 U.S.C. § 707(a).

31. *Id.* § 102(1).

32. *In re Dinova,* 212 B.R. 437, 442 (2d Cir. BAP 1997).

33. *See* 11 U.S.C. § 102(1).

34. *In re Dinova,* 212 B.R. at 443.

35. *Id.* (internal quotation marks omitted).

36. *See* FED. BANKR. R. 1017(f) ("Rule 9014 governs a proceeding to dismiss or suspend a case ...."); *id.* 9014 ("[R]elief shall be requested by motion, and reasonable notice and opportunity for a hearing shall be afforded the party against whom relief is sought.").

37. *Cf., e.g., Mackler Prods., Inc. v. Cohen,* 225 F.3d 136, 144 (2d Cir.2000) (when court imposes sanctions under its inherent powers, " 'the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.' " (quoting *In re 60 E. 80th St. Equities, Inc.,* 218 F.3d 109, 117 (2d Cir.2000))); *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 97 (2d Cir.) (party to be sanctioned "must be forewarned of the authority under which sanctions are being considered and given a chance to defend himself against specific charges"), *cert. denied,* 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997).

38. Indeed, the fact that the debtors filed a notice of appeal twenty-one days before the Bankruptcy Court dismissed the case evidences their understanding that dismissal would be automatic.

Perhaps the time that elapsed between the June 27, 2001 hearing and the ultimate dismissal of the case would have provided sophisticated litigants with sufficient opportunity to request a hearing. Here, however, the conduct of the proceedings was not reasonably calculated to apprise *these* debtors of their right to a hearing on the Section 707(a) issue. Indeed, the court below conveyed exactly the opposite impression to them. In all the circumstances, the March 26 Order must be vacated for failure to provide the debtors with the requisite notice and a hearing prior to dismissal.

▓▓ Nor is the lack of notice and a hearing the only infirmity of the order dismissing the bankruptcy case. While dismissal for cause under Section 707(a) is not limited to the three examples enumerated within the section,[39] bankruptcy courts do not enjoy untrammeled discretion to dismiss bankruptcy cases. Rather, they "must engage in case-by-case analysis in order to determine what constitutes 'cause' sufficient to warrant dismissal" and must determine "whether dismissal would be in the best interest of all parties in interest."[40] In other words, bankruptcy courts are charged with "assess[ing] the

vagaries of each case."[41] While failure to comply with a court order may constitute "cause" in some circumstances, such a result is not automatic.[42]

In this instance, the March 26 Order affords no basis for concluding that the court below considered anything other than the debtors failure to pay the sanction imposed as a result of the *contretemps* that took place at the June 27, 2001 hearing concerning whether the court records relied upon by the Defendants were "false." And there was at least one other factor worthy of consideration. The debtors have limited competence in the English language, which makes it quite possible that Mr. Bucurescu's assertion that the court records in question were "false" was intended to mean only that he considered the determinations they contained to be erroneous,[43] in which event it would be difficult to see what the fuss was about.

While the Court understands the Bankruptcy Court's frustration with the debtors' papers and the presentation of their arguments, it is not clear on this record that it took " 'care to strike the balance between alleviating court calendar congestion and protecting a party's right to due

---

39. *In re Dinova*, 212 B.R. at 442.

40. *Id.; see, e.g., In re Jackson*, 258 B.R. 272, 276 (Bankr.M.D.Fla.2000); *In re Cecil*, 71 B.R. 730, 734 (Bankr.W.D.Va.1987).

41. *In re Dinova*, 212 B.R. at 441.

42. *See, e.g., Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209–13, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (holding that FED R. CIV. P. 37 did not authorize dismissal of complaint for noncompliance with pretrial production order when failure was due to inability and not bad faith); *Baffa*, 222 F.3d at 62 (determining whether district court abused its discretion in dismissing action for failure to comply with court order pursuant to FED. R. CIV. P. 41(b) requires consideration of (1) the

duration of plaintiff's non-compliance, (2) whether the plaintiff had notice that such conduct would result in dismissal, (3) whether prejudice to defendant is likely to result, and (4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard); *In re Dinova*, 212 B.R. at 444 (debtor's failure to attend one or more 341 meetings may or may not constitute cause); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987) (reversing dismissal of *pro se* litigant's civil rights case for failure to comply with court order requiring plaintiff to file an amended complaint in a timely manner).

43. *See, e.g.,* Tr., July 2, 2002, at 46–49.

process and a fair chance to be heard.' "[44] The March 26 Order therefore is vacated.

### Conclusion

For the foregoing reasons, the March 26 is vacated, and the appeal is dismissed with respect to the January 22 Order. The matter is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

SO ORDERED.

---

**44.** *Baffa,* 222 F.3d at 63 (alteration in original) (quoting *Nita v. Conn. Dep't of Envtl. Protection,* 16 F.3d 482, 485 (2d Cir.1994)); *see also In re MacInnis,* 235 B.R. 255, 258 (S.D.N.Y.1998) ("Although a reviewing court may not substitute its judgment for that of the bankruptcy court, a finding of an abuse of discretion is proper when the bankruptcy court fails to consider all relevant factors.").